1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MEREDITH J. ROHNER,

                    Plaintiff,

          v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.

Case No. EDCV 13-1613 JC

MEMORANDUM OPINION

## I.  SUMMARY

On September 18, 2013, plaintiff Meredith J. Rohner ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The Court has taken both motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; September 20, 2013 Case Management Order ¶ 5.

///
///

1

1    Based on the record as a whole and the applicable law, the decision of the
2    Commissioner is AFFIRMED.  The findings of the Administrative Law Judge
3    ("ALJ") are supported by substantial evidence and are free from material error.[1]

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**
5    **DECISION**

6    On August 24, 2010, plaintiff filed an application for Supplemental Security
7    Income benefits.  (Administrative Record ("AR") 122).  Plaintiff asserted that she
8    became disabled on July 1, 2010, due to seizures, blackouts, headaches and foot
9    numbness.  (AR 142).  The ALJ examined the medical record and heard testimony
10   from plaintiff (who was represented by counsel) and a vocational expert on
11   May 21, 2012.  (AR 24-60).

12   On May 24, 2012, the ALJ determined that plaintiff was not disabled
13   through the date of the decision.  (AR 10-20).  Specifically, the ALJ found:
14   (1) plaintiff suffered from the following severe impairments:  epilepsy, partial
15   complex seizures, multiple sclerosis, peripheral neuropathy and obesity (AR 12);
16   (2) plaintiff's impairments, considered singly or in combination, did not meet or
17   medically equal a listed impairment (AR 13); (3) plaintiff retained the residual
18   functional capacity to perform a range of light work (20 C.F.R. § 416.967(b)) with
19   additional limitations[2] (AR 14); (4) plaintiff could not perform her past relevant

20

21
22   [1]The harmless error rule applies to the review of administrative decisions regarding
     disability.  See Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (discussing contours of
23   application of harmless error standard in social security cases) (citing, *inter alia*, Stout v.
     Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006)).

24
25   [2]The ALJ determined that plaintiff:  (i) could lift and/or carry 15 pounds occasionally and
     less than 10 pounds frequently; (ii) could stand and/or walk for two hours out of an eight-hour
26   workday with regular breaks; (iii) could sit for six hours out of an eight-hour workday with
     regular breaks; (iv) needed a sit/stand option in thirty minute intervals; (v) had unlimited pushing
27   and/or pulling abilities other than as indicated for lifting and/or carrying; (vi) could occasionally
     climb stairs and stoop; (vii) could not kneel, crawl or crouch; (viii) could frequently handle and
28                                                                                        (continued...)

2

work (AR 18); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically small products assembler II, order clerk (food and beverage), and charge account clerk (AR 18-19); and (6) plaintiff's allegations regarding her limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 15).

The Appeals Council denied plaintiff's application for review. (AR 1).

## III.   APPLICABLE LEGAL STANDARDS

### A.   Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)    Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

///

///

---

[2](...continued)
finger, but was precluded from intense gripping; (ix) could not work at heights; and (x) might be absent or off task five percent of the time. (AR 14).

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B.    Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

4

1  (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable
2  mind might accept as adequate to support a conclusion."  Richardson v. Perales,
3  402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a
4  mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing
5  Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

6        To determine whether substantial evidence supports a finding, a court must
7  "'consider the record as a whole, weighing both evidence that supports and
8  evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.
9  Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d
10  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming
11  or reversing the ALJ's conclusion, a court may not substitute its judgment for that
12  of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

13  **IV.   DISCUSSION**

14        **A.   The ALJ Properly Evaluated the Opinions of Plaintiff's Treating**
15            **Physician**

16        Plaintiff contends that a remand or reversal is warranted because the ALJ
17  failed properly to consider the opinions expressed by Dr. Robert Nelson,
18  plaintiff's treating physician, in an April 12, 2012 Medical Opinion Re: Ability to
19  Do Work-Related Activities (Physical) form – specifically that plaintiff had
20  significant functional limitations which would essentially prevent her from
21  performing even sedentary work ("Dr. Nelson's Opinions").  (Plaintiff's Motion at
22  2-7) (citing AR 306-08).  The Court disagrees.

23        **1.   Pertinent Law**

24        In Social Security cases, courts employ a hierarchy of deference to medical
25  opinions depending on the nature of the services provided.  Courts distinguish
26  among the opinions of three types of physicians:  those who treat the claimant
27  ("treating physicians") and two categories of "nontreating physicians," namely
28  those who examine but do not treat the claimant ("examining physicians") and

those who neither examine nor treat the claimant ("nonexamining physicians"). <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[3]  <u>See</u> <u>id</u>.  In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  <u>Morgan v. Commissioner of Social Security Administration</u>, 169 F.3d 595, 600 (9th Cir. 1999) (citing <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability.  <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989) (citing <u>Rodriguez v. Bowen</u>, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons.  <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted).  The ALJ can reject the opinion of a treating physician in favor of another conflicting medical opinion, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.  <u>Id.</u> (citation and internal quotations omitted); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); <u>Magallanes</u>, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to

---

[3]<u>Cf.</u> <u>Le v. Astrue</u>, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

1  reject a treating physician opinion – court may draw specific and legitimate

2  inferences from ALJ's opinion).  "The ALJ must do more than offer his

3  conclusions."  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  "He must

4  set forth his own interpretations and explain why they, rather than the

5  [physician's], are correct."  Id.  "Broad and vague" reasons for rejecting the

6  treating physician's opinion do not suffice.  McAllister v. Sullivan, 888 F.2d 599,

7  602 (9th Cir. 1989).

8          **2.    Analysis**

9        First, as the ALJ noted, the form Dr. Nelson submitted contained only

10  "checklist-style" opinions.  (AR 306-08).  As the ALJ found, Dr. Nelson provided

11  only conclusory opinions regarding plaintiff's abilities with no explanation of the

12  medical findings beyond plaintiff's subjective complaints of seizures which

13  brought the treating physician to conclude that plaintiff had disabling functional

14  limitations.  (AR 17, 306-08).  Dr. Nelson also did not provide any clinical

15  findings (i.e., results of objective medical testing) – either his own or from another

16  doctor – to support his opinions.  (AR 17, 306-08).  The ALJ properly rejected Dr.

17  Nelson's Opinions on this basis alone.  See Crane v. Shalala, 76 F.3d 251, 253

18  (9th Cir. 1996) ("ALJ [] permissibly rejected [psychological evaluation forms]

19  because they were check-off reports that did not contain any explanation of the

20  bases of their conclusions."); see also De Guzman v. Astrue, 343 Fed. Appx. 201,

21  209 (9th Cir. 2009) (ALJ "is free to reject 'check-off reports that d[o] not contain

22  any explanation of the bases of their conclusions.'") (citing id.); Murray v.

23  Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for

24  individualized medical opinions over check-off reports).

25        Second, the ALJ also properly rejected Dr. Nelson's Opinions because they

26  were not supported by any progress notes from the treating physician or the

27  medical record as a whole.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir.

28  2005) ("The ALJ need not accept the opinion of any physician, including a

1   treating physician, if that opinion is brief, conclusory, and inadequately supported
2   by clinical findings.") (citation and internal quotation marks omitted); Connett v.
3   Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly
4   rejected where treating physician's treatment notes "provide no basis for the
5   functional restrictions he opined should be imposed on [the claimant]").  For
6   example, although the record reflects that Dr. Nelson referred plaintiff to other
7   physicians for treatment of her seizure disorder, the record does not contain any
8   treatment notes from Dr. Nelson himself.  (AR 200-305).  Moreover, treatment
9   records from the physicians to whom Dr. Nelson referred plaintiff also provide no
10  support for Dr. Nelson's Opinions.  As the ALJ discussed in great detail, such
11  treatment records reflect that, overall, plaintiff's seizure disorder was essentially
12  well controlled when plaintiff was compliant with her prescribed medication.  (AR
13  16-18) (citing Exhibit 2F [AR 201-28]; Exhibit 10F [AR 282-304]).

14      Third, the ALJ properly rejected Dr. Nelson's Opinions, in part, in favor of
15  the conflicting opinions of the reviewing physicians – both of whom found no
16  functional limitations beyond those already accounted for in the ALJ's residual
17  functional capacity assessment.  (AR 17-18) (citing Exhibit 5F [AR 259-64];
18  Exhibit 9F [AR 280-81]).  The opinions of the state-agency reviewing physicians
19  constitute substantial evidence supporting the ALJ's decision since they are
20  supported by the medical record as a whole and are consistent with it.  See
21  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) ("reports of the
22  nonexamining advisor need not be discounted and may serve as substantial
23  evidence when they are supported by other evidence in the record and are
24  consistent with it").  In fact, to account for plaintiff's peripheral neuropathy and
25  related subjective complaints the ALJ "assessed more restrictive [] functional
26  limitations" than the state-agency reviewing physicians.  (AR 17).  Any conflict in
27  the properly supported medical opinion evidence was the sole province of the ALJ
28  to resolve.  Andrews, 53 F.3d at 1041.

8

1    Finally, contrary to plaintiff's suggestion, the ALJ did not fail in his duty to
2    develop the record by not recontacting Dr. Nelson "to obtain clarification
3    regarding the basis of his opinion." (Plaintiff's Motion at 6).  Although plaintiff
4    bears the burden of proving disability, the ALJ has an affirmative duty to assist a
5    claimant in developing the record "when there is ambiguous evidence or when the
6    record is inadequate to allow for proper evaluation of the evidence."  Mayes v.
7    Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted); Bustamante,
8    262 F.3d at 954; see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005)
9    (ALJ has special duty fully and fairly to develop record and to assure that
10   claimant's interests are considered).  Here, as discussed above, Dr. Nelson's
11   April 12 report contained nothing more than check-off opinions without any
12   medical explanation of the bases for the opinions.  The ALJ had no obligation to
13   recontact Dr. Nelson before rejecting such opinions.  See De Guzman, 343 Fed.
14   Appx. at 209 (ALJ has no obligation to recontact physician to determine the basis
15   for opinions expressed in "check-off reports that d[o] not contain any explanation
16   of the bases of their conclusions.") (citation and internal quotation marks omitted).
17   Even so, the ALJ did not find (nor does the record reflect) that the medical
18   evidence as a whole was ambiguous or inadequate to permit a determination of
19   plaintiff's disability.  To the contrary, the ALJ properly relied on the opinions of
20   the state-agency reviewing physicians which, as noted above, constituted
21   substantial evidence supporting the ALJ's non-disability determination.
22   Therefore, even assuming Dr. Nelson's Opinions were inadequate to allow the
23   ALJ to determine the bases therefor, the ALJ did not err in failing to seek
24   clarification.  See Bayliss, 427 F.3d at 1217 (no duty to recontact doctors where
25   other evidence in record is adequate for ALJ to reach a disability determination).
26       Accordingly, plaintiff is not entitled to a remand or reversal on this basis.
27   ///
28   ///

9

**B.    The ALJ's Findings at Step Five Are Supported by Substantial Evidence and Free of Material Error**

Plaintiff asserts that the ALJ erred at step five in finding that plaintiff could perform the jobs of small products assembler II, order clerk, and charge account clerk because the requirements of such representative occupations are inconsistent with the ALJ's residual functional capacity assessment that plaintiff might be absent or off task five percent of the time.  (Plaintiff's Motion at 7-10).  The Court disagrees.

**1.    Pertinent Law**

If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show, at step five, that the claimant can perform some other work that exists in "significant numbers" in the national economy (whether in the region where such individual lives or in several regions of the country), taking into account the claimant's residual functional capacity, age, education, and work experience.  Tackett, 180 F.3d at 1100 (citations omitted); 42 U.S.C. § 423(d)(2)(A).  The Commissioner may satisfy this burden, depending upon the circumstances, by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1100-01).  Where, as here, a claimant suffers from both exertional and nonexertional limitations, the Grids do not mandate a finding of disability based solely on the claimant's exertional limitations, and the claimant's non-exertional limitations are at a sufficient level of severity such that the Grids are inapplicable to the particular

///

///

///

///

1  case, the Commissioner must consult a vocational expert.[4]  Hoopai v. Astrue, 499

2  F.3d 1071, 1076 (9th Cir. 2007); see Lounsburry v. Barnhart, 468 F.3d 1111, 1116

3  (9th Cir. 2006); Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989).

4  The vocational expert's testimony may constitute substantial evidence of a

5  claimant's ability to perform work which exists in significant numbers in the

6  national economy when the ALJ poses a hypothetical question that accurately

7  describes all of the limitations and restrictions of the claimant that are supported

8  by the record.  See Tackett, 180 F.3d at 1101; see also Robbins, 466 F.3d at 886

9  (finding material error where the ALJ posed an incomplete hypothetical question

10  to the vocational expert which ignored improperly-disregarded testimony

11  suggesting greater limitations); Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001)

12  ("If the record does not support the assumptions in the hypothetical, the vocational

13  expert's opinion has no evidentiary value.").

14  ALJs routinely rely on the Dictionary of Occupational Titles ("DOT") "in

15  determining the skill level of a claimant's past work, and in evaluating whether the

16  claimant is able to perform other work in the national economy."  Terry v.

17  Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); see also

18  20 C.F.R. § 416.966(d)(1) (DOT is source of reliable job information).  The DOT

19  is the presumptive authority on job classifications.  Johnson v. Shalala, 60 F.3d

20  1428, 1435 (9th Cir. 1995).  An ALJ may not rely on a vocational expert's

21  testimony regarding the requirements of a particular job without first inquiring

22  whether the testimony conflicts with the DOT, and if so, the reasons therefor.

23  Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing Social

24  Security Ruling 00-4p).  In order for an ALJ to accept vocational expert testimony

25  that contradicts the DOT, the record must contain "persuasive evidence to support

26  _____

27  [4]The severity of limitations at step five that would require use of a vocational expert must
be greater than the severity of impairments determined at step two.  Hoopai v. Astrue, 499 F.3d

28  1071, 1076 (9th Cir. 2007).

the deviation." <u>Pinto v. Massanari</u>, 249 F.3d 840, 846 (9th Cir. 2001) (quoting <u>Johnson</u>, 60 F.3d at 1435). "Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, [citation] or inferences drawn from the context of the expert's testimony." <u>Light v. Social Security Administration</u>, 119 F.3d 789, 793 (9th Cir.), <u>as amended on rehearing</u> (1997) (citations omitted).

### 2.    Analysis

Here, substantial evidence supports the ALJ's non-disability determination at step five.  Plaintiff does not dispute the accuracy of the hypothetical question the ALJ posed to the vocational expert.  The vocational expert testified that her opinions regarding the representative occupations were consistent with the DOT. (AR 58-59).  Plaintiff points to no requirement in the DOT for the occupations of small products assembler II, order clerk, and charge account clerk (and the Court finds none) that is inconsistent with plaintiff's need to be absent or off task up to five percent of the time.  <u>See</u> DOT §§ 205.367-014 [Charge-Account Clerk], 209.567-014 [Order Clerk, Food and Beverage], 739.687-030 [Assembler, Small Parts II].  Thus, the vocational expert's testimony in response to the ALJ's complete hypothetical question, without more, was substantial evidence supporting the ALJ's determination that plaintiff was able to perform work which exists in significant numbers in the national economy.  <u>See</u> <u>Tackett</u>, 180 F.3d at 1101; <u>see also</u> <u>Bayliss</u>, 427 F.3d at 1218 ("A [vocational expert's] recognized expertise provides the necessary foundation for his or her testimony.  Thus, no additional foundation is required.").  Plaintiff's unsupported lay opinion that employers would be unwilling to retain a worker who needed to be absent or off task up to five percent of the time does not, as plaintiff suggests, undermine the reliability of the vocational expert's opinion which the ALJ adopted at step five.

Accordingly, plaintiff is not entitled to a remand or reversal on this basis.

///

1  **V.    CONCLUSION**

2          For the foregoing reasons, the decision of the Commissioner of Social

3  Security is affirmed.

4          LET JUDGMENT BE ENTERED ACCORDINGLY.

5  DATED:   March 18, 2014

6                                                    _____/s/_____

7                                                    Honorable Jacqueline Chooljian
                                                     UNITED STATES MAGISTRATE JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28